# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:21-CV-00375-DOC-(ADSx)　　　　　　　　　　　Date:  June 25, 2021

Title: NIPPON SIGMAX CO., LTD; SIGMAX AMERICA, INC. v. KRANOS CORP., INC.; ROBERT ERB

---

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Kelly Davis | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):**　　ORDER GRANTING IN PART PLANTIFF'S MOTION TO STRIKE ANSWER BY DEFENDANT ROBERT ERB [28]

Before the Court is Plaintiffs' Nippon Sigmax Ltd. And Sigmax America, Inc. ("Plaintiffs" or "Sigmax") Motion to Strike Portions of Answer ("Motion") (Dkt. 28). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. Pro. 78; Cal. R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court GRANTS Plaintiffs' Motion.

## I.　Background

This a civil procedure case in contract law's clothing. Specifically, the Court must determine whether the heightened pleading standards *Twombly* and *Iqbal* announced apply to an affirmative defenses pled in an answer.

### A.     Facts

Plaintiffs Nippon Sigmax Co. Ltd. and its wholly owned subsidiary Nippon Sigmax design, manufacture, sale, and export supports, braces, icing products, insoles, and other related support devices for athletes marketed under the name ZAMST. Complaint ("Compl.") ¶¶ 1-8.

On or about October 3, 2018, Sigmax entered into a distribution agreement (the "Agreement") with Defendant Kranos Corporation, Inc. dba "Schutt Sports," ("Kranos"). *Id.* ¶ 3. Robert Erb, also a named Defendant, was at all relevant times Kranos's CEO. (Collectively, Kranos and Erb are called "Defendants") *Id.* ¶ 4. The Agreement made Kranos the exclusive dealer of ZAMST products in North America, and Kranos agreed to pay Plaintiff the wholesale price of the ZAMST products it sold. *Id.* ¶ 12.

About one year after the Agreement was signed, Kranos was in arrears on its obligations. *Id.* ¶ 22. On October 7, 2019, Erb contacted Plaintiffs to change the payment schedule so that Kranos could more easily meet its obligations; Plaintiffs agreed, and the new payment plan ("Payment Plan Addendum") was adopted on November 11, 2019. *Id.* ¶¶ 22-23. The Complaint alleges Erb and other Kranos executives "specifically represented and promised on behalf of [Kranos] that: 1) [Kranos] had the financial ability to pay in accordance with the new proposed payment plan; and 2) [Kranos] would pay in accordance with the new proposed payment plan." *Id.* ¶ 23. Erb maintains he did not make these representations. Answer ("Ans.") ¶ 23 (Dkt. 26).

Kranos defaulted on its obligations under the Payment Plan Addendum. *Id.* ¶ 28. On September 6, 2020, Plaintiffs provided Kranos with a notice of termination letter that requested Kranos pay all amounts owed under the Agreement and the Payment Plan Addendum. *Id.* ¶ 31. Plaintiffs estimate Kranos owed at least $2,116,118. *Id.* ¶ 29.

In December 2020, Kranos filed for Chapter 7 bankruptcy and proceedings against Kranos were stayed. *See* Notice of Stay of Proceedings (Dkt. 1-2). On April 16, 2021, this Court denied Erb's motion to stay proceeding, meaning Plaintiffs' claims against Erb are still active.

### B.     Procedural History

Plaintiffs' Complaint, originally filed in Orange County Superior Court on December 4, 2020 and removed to this Court on February 26, 2021, contained two causes

of action against Plaintiff: Fraud and Unfair Competition and False Advertising under Cal. Bus. & Prof. Code §§ 7200 *et seq*. *See generally* Compl.

On April 22, 2021, Erb answered Plaintiffs' Complaint and asserted thirty-one affirmative defenses. *See generally* Ans. Plaintiffs filed a Motion to Strike these affirmative defenses on May 13, 2021. Erb filed his opposition ("opp'n") (Dkt. 30) on May 24, 2021, and Plaintiffs replied on May 28, 2021. (Dkt. 31).

## II.    Discussion

### A.    Proper Legal Standard

The Court must first decide whether the pleading standards of *Twombly* and *Iqbal* apply to affirmative defenses asserted in a defendant's answer.

Federal Rule of Civil Procedure 12(f) allows a court, *sua sponte* or on a motion from the plaintiff, to "strike from a pleading an insufficient" affirmative defense. "An affirmative defense, under the meaning of Federal Rule of Civil Procedure 8(c), is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claims are proven." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173-74 (N.D. Cal 2010) (citations omitted). An answer must "state in short and plain terms" the affirmative defenses a defendant plans to advance. Fed. R. Civ. P. 8(b)(1)(A).

Rule 8(b)'s "short and plain" statement requirement for pleading affirmative defenses is identical to the Federal Rules' requirement that a plaintiff's complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Relying on this identical language, the Ninth Circuit, in *Wyshak v. City Nat'l Bank*, ruled a defendant's burden of pleading an affirmative defense is identical to a plaintiff's burden of pleading in a complaint. *See* 607 F.2d, 824, 827 (9th Cir. 1979). In particular, "the key to determining the sufficiency of pleading an affirmative defense," like determining the sufficiency of a complaint, "is whether it gives plaintiff fair notice of the defense. *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under *Conley*, fair notice meant a pleader must only present what the "claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. A party did not carry its burden only if there was no set of facts on which the pleading party could prevail. *See id.*

Since *Wyshak*, the Supreme Court has changed a complainant's burden of pleading and all but formally overruled *Conley*. Instead of merely pleading the grounds on which a claim is based, a complainant must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This includes pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations omitted)).

Despite this change in a plaintiff's burden of pleading, the Ninth Circuit has yet to definitively say whether *Wyshak* remains good law.[1] In this case, Plaintiffs contend what's good for the goose is good for the gander: since complainants must satisfy the *Twombly*/*Iqbal* plausibility standards, defendants' affirmative defenses must also be plausible. This position finds implicit support in *Wyshak*, since the *Wyshak* court cited cases concerning the sufficiency of a complaint in analyzing the sufficiency of the defendant's affirmative defenses. *See* 607 F.2d at 827. Erb, on the other hand, urges the Court to retain the lower "notice pleading" standard for affirmative defenses that *Wyshak* employed. Ultimately, the Court does not find Erb's argument persuasive, but it is not without merit.

### 1. Reasons Against Requiring Affirmative Defenses to be Plausible

Many district courts have not required affirmative defenses to be plausible to avoid being stricken on a 12(f) motion. *See*, *e.g.*, *Vazquez-Robles v. CommoLoCo, Inc.*, 186 F. Supp. 3d 138, 149 (D.P.R. 2016) ("In *Twombly* and *Iqbal*, the Supreme Court interpreted Federal Rule of Civil Procedure 8(a)(2), which sets forth the pleading requirements for a complaint and employs different language, governs a different pleading, and affects a different stage in the litigation than Federal Rule of Civil Procedure 8(c), which governs affirmative defenses."). These courts have justified retaining the pre-*Twombly*/*Iqbal* standard in three ways.

---

[1] In *Kohler v. Flava Enters.*, the Ninth Circuit stated the fair notice required by the pleading standards only requires describing the defense in general terms." 779 F.3d 1016, 1019 (9th Cir. 2015) (internal quotations omitted). However, the *Kohler* court's discussion of the pleading standards for affirmative defenses is too scant for this Court to conclude the case affirms *Wyshak*'s continued validity in the post-*Twombly*/*Iqbal* world. Other district courts in this Circuit have adopted this reading of *Kohler*. *See, e.g., Murphy v. Trader Joe's*, 2017 WL 23193 * 2 ("Importantly, *Kohler* did not directly address the pleading standard for affirmative defenses; the court touched on the issue only in passing.").

First, some courts decline to subject complaints and answers to different standards because plaintiffs have longer to prepare their complaint than defendants do to prepare their answers. While a plaintiff's only time constraint in filing their complaint is the statute of limitations, a defendant generally has only twenty-one days to prepare their answer. Fed. R. Civ. P. 12(a)(1)(A)(i). Therefore, a plaintiff has the time to gather facts and perfect legal arguments to make their claim for relief plausible, whereas a defendant does not. In *Wells Fargo & Co. v. United States*, for example, the plaintiff had "months," and possibly "years" to draft its complaint seeking a refund of taxes, whereas the United States only had "21 days" to "investigate" its negligence affirmative defense. 750 F. Supp. 1049, 1051 (D. Minn. 2010). Accordingly, the court concluded the Twombly/*Iqbal* "plausibility requirement" is "more fairly imposed on plaintiffs," not defendants. *Id.*

Second, some courts have justified cabining the plausibility requirement based on the Federal Rules' plain text. Rule 8(a), which governs complaints, requires a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1) (emphasis added). Rule 8(c), on the other hand, only requires a defendant to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). That only Rule 8(a) requires a "showing" suggests only it should be governed by the plausibility standard. *See Lopez v. Asmar's Mediterranean Food, Inc.*, 2011 WL 98573 * 2 (E.D. Va. Jan. 10, 2011) ("Notably absent is a required 'showing that the pleader is entitled to relief.' Yet Plaintiffs' argument would have this Court read such a requirement into Rule 8(b)."); *Jam Tire, Inc. v. Harbin*, 2014 WL 4388286 * 3 (N.D. Ohio Sept. 5, 2014) ("I am required to give the give the Federal Rules of Civil Procedure their plain meaning . . . unlike Rule 8(a)(2)'s requirement that a pleader 'show' an entitlement to relief, Rule 8(c) requires only that the responding party 'affirmatively state' any affirmative defenses." (citations omitted)); *Laferte v. Murphy Painters, Inc.*, 2017 WL 2537259, * 2 (S.D. Fla. June 12, 2017) ("The difference in language between Rules 8(a) and Rule 8(b) is subtle but significant.").

Third, many district courts have concluded declining to extend the plausibility requirement to affirmative defenses is consistent with the policy underlying *Twombly* and *Iqbal*. Those cases heightened the burden of pleading, in part, to spare the courts from overseeing "fishing expeditions." *Twombly*, 550 U.S. at 577 (Stevens, J., dissenting). Since it only took threadbare allegations to unlock the powerful tools of discovery, plaintiffs could require courts to oversee onerous discovery processes after merely asserting "defendant harmed me." Many courts have found requiring affirmative defenses to be plausible would not promote judicial economy. Since "affirmative defenses generally add little marginal cost," allowing defendants to assert every conceivable

affirmative defense would not increase the costs of litigation. *Traincroft, Inc. v. The Ins. Co. of Pa.*, 2014 WL 2865907 * 3 (D. Mass. Jun. 23, 2014). Moreover, subjecting defendants to heightened pleading standards would mean more defenses would be stricken. If discovery unearthed evidence relevant to these struck defenses, courts would be swamped with motions to amend the answer to reintroduce these defenses. *See Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1259 (D. Kan. 2011) (noting that that applying the *Twombly*/*Iqbal* standard would "likely result in increased motions practice with little practical impact on the case's forward progression").

### 2. Reasons for Requiring Affirmative Defenses to be Plausible

While the preceding arguments are powerful, they can be answered. First, while defendants are the only ones with a meaningful time constraint for pleading, information regarding defenses tends to be more squarely within a defendant's knowledge than information plaintiffs need to make their claims plausible. This asymmetrical information justifies subjecting plaintiffs' claims and defendants' affirmative defenses to the same pleading standard, despite plaintiffs' friendlier filing deadlines.

Second, the textual argument is not dispositive. In *Iqbal*, the Court extended *Twombly*'s pleading standard to all civil complaints because the Court concluded Rule 8's purpose was to give the parties fair notice. 556 U.S. at 1950-51. And a party is only on notice if it knows there is a plausible factual basis for an assertion. *Id.* Whatever subtle difference exists between "show" and "state" is not enough to overcome the fact that both *Twombly* and *Iqbal* discussed the policy underlying all of Rule 8, not just Rule 8(a), and plaintiffs have the same right to fair notice of affirmative defenses as a defendant does of a complaint's causes of action. *See Gomez v. Bird Auto., LLC*, 411 F. Supp. 3d 1332, 1337 (S.D. Fla. 2019) (extending the plausibility requirement to affirmative defenses because "fair notice to the opposing party" requires "that there is a plausible factual basis for the assertion and not to suggest that it might simply apply to the case").

Finally, the Court believes extending the plausibility requirement to affirmative defenses strikes the proper balance between judicial economy and avoiding prejudice to the parties. The *Twombly*/*Iqbal* heightened standard saved judicial resources by avoiding fishing expeditions, where a plaintiff's threadbare accusations could subject defendants to the rigors of discovery. While causes of action and affirmative defenses are functionally distinct, they are very similar analytically. To make out their affirmative defenses, defendants bear the burden of production during discovery and the burden of persuasion

at trial. Accordingly, defendants frequently make discovery requests relevant to these defenses, and plaintiffs, like defendants, should not be subject to discovery requests pursuant to claims that have not been "nudged . . . across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Racick v. Dominion L. Assocs.*, 270 F.R.D. 228, 233 (E.D.N.C. 2010) ("Boilerplate defenses . . create unnecessary work and extend discovery."). This analysis suggests extending the plausibility requirement would best promote *Twombly*/*Iqbal*'s goal of preserving judicial resources while preserving access to justice.

At the same time, the Court is not concerned the plausibility standard will deprive defendants of an opportunity to assert relevant affirmative defenses. Federal Rule of Civil Procedure 15(a)(2) requires courts to "freely give leave" to parties who wish to amend their pleadings. Therefore, any prejudice to a defendant the *Twombly*/*Iqbal* standard may create can be mitigated through amendment if discovery unearths facts that nudge the defense from conceivable to plausible.

In addition to the preceding arguments, the Court's decision to subject Erb's thirty-one affirmative defenses to the *Twombly*/*Iqbal* plausibility standard is supported by the Court's strong interest in promoting stability and predictability. "The vast majority of courts," both in this circuit and outside, "presented with the issue have extended *Twombly*'s heightened pleading standard to affirmative defenses." *Barnes*, 718 F. Supp. 2d at 1171-72; *see also Hamilton v. Quinonez*, 2015 WL 1238245 *2 (E.D. Cal. March 17, 2015) (noting most district courts in the Ninth Circuit apply the plausibility standard). Moreover, the Second Circuit, the only court of appeals to rule on the issue, has held the plausibility standard extends to defendants' affirmative defenses. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019).

In general, hueing closely to precedent is the "preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827-828 (1991). This is especially true when a court confronts procedural questions. The Federal Rules of Civil Procedure's overwhelming policy is that "cases should be decided on their merits whenever reasonably possible," not based on procedural missteps. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Simple, predictable procedural rules serve this goal by discouraging "gamesmanship" and increasing the "likelihood that results and settlements will reflect a claim's legal and factual merits." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Litigation is not a game of procedural "gotcha."

Since extending the *Twombly*/*Iqbal* standard is the majority position, Erb should have been on notice he needed to plead plausible affirmative defenses in his answer. Consistent with this Court's preference for stable, predictable procedural rules, the Court scrutinizes Erb's affirmative defenses using the *Twombly*/*Iqbal* standard.

### B.　Applying the Plausibility Standard

Having determined the *Twombly*/*Iqbal* standard applies to affirmative defenses on 12(f) motions to strike, the Court applies this standard to the thirty-one affirmative defenses asserted in Erb's answer. To satisfy this standard, a defendant must provide "more than labels and conclusions, and a formulaic recitation of the elements of" an affirmative defense "will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While the Court will accept all factual allegations as true, it is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

All of Erb's affirmative defenses feature conclusory statements, which the court need not accept as true. The Eighteenth Affirmative Defense is representative. It states: "Plaintiffs are barred by the doctrine of unjust enrichment." Ans. at 11. This is nothing more than a conclusory statement. Accordingly, the Eighteenth Affirmative Defense, along with every other affirmative defense, fails to reach the plausibility standard. As such, all thirty-one affirmative defenses are stricken from the answer. Plaintiff's Motion is GRANTED.

### III.　Disposition

For the reasons explained above, the Court hereby GRANTS Plaintiffs' Motion to Strike the thirty-one affirmative defenses Erb asserted in his answer.

The Clerk shall serve this Minute Order on the Parties.